Our next case is Martinez de Valle v. Office Max, numbers 16-1514, 16-1675, and 16-2751. Good morning, Your Honors. May it please the Court, my name is Rhea Lawrence on behalf of the appellants Serrano, Martinez, and Cardi. Are you going to reserve time? I would like to, Your Honor, five minutes. Okay, that's granted. And also, of course, there's a cross-appeal here. If at some point you can address jurisdiction with respect to the cross-appeal, that would be great. Thank you, Your Honor. In this case, we have asserted three main issues in appeal with regard to the District Court's entry of summary judgment in favor of the appellants. The issue I'd like to start with first is that of the breach of good faith and fair dealing claim. In this jurisdiction, in Chapman v. Cornwall, the V.I. Supreme Court has recognized this as a claim. There's no contract here, though, of course, right? There is a contract. A wide contract? Every employment relationship is contractual. You give a service, you perform the service, and you get paid by the employer. It is contractual. What are the other terms of the contract in this case, besides paying the employees their salary? That's the term. Those are the fundamental terms that form the contractual relationship. Your clients do work, pays them. That's correct. Any other terms of the contract? The implied terms are that they be treated with good faith, which is an implied element of every contractual relationship. And this is not made out of whole cloth. The V.I. Supreme Court has recognized in the at-will employment relationship this is a claim. Several courts in this jurisdiction have recognized this as a claim. What has become an issue of contention are the elements of this claim, and whether or not— Is deceit and fraud or fraud an element of the claim for breach of the implied covenant of good faith and fair dealing? It is an element of the claim. The issue is whether or not the tort of fraud is an element of the claim, versus simply proving fraud as defined as a dishonest act. And this is where the issue has become hotly contested within this jurisdiction, is whether or not you have to independently prove the tort of fraud as an additional thing with regard to— the thing that we understand fraud to be, which is a tort. Well, no one has—there's only one court. Well, the defendant cited the court that says that it's the tort of fraud that is referenced in that claim. The Restatement 205 never referenced the tort of fraud as an element of that claim, because this is where that claim is defined in Restatement 2nd of Contracts, Section 205. They don't refer to the tort of fraud. They refer to fraud in the sense of the common term, a dishonest act. And where do you get the idea that when they say this has to include deceit or fraud, that they don't mean what—that they mean something other than what those terms generally mean when made a part of a legal action? You say that that's—you've said it means fraud in the general sense. I'm not sure I understand what you mean. What's the general sense of the word fraud if it's not the thing where you make a misrepresentation, there's reliance, that reliance causes damage? You know, what does it mean to say fraud if it doesn't mean that? It means a dishonest act. We can say someone committed fraud upon—somebody committed fraud without it meaning that it's the tort of fraud. Why would they— If someone goes to OfficeMax and says, you know, do you open at 9 and they lie and say, no, we open at 930, that's a fraud. It's a dishonest act. It's a fraud. And that's a fraud. That's actionable. You could bring a suit for that. Well, no, that's a different story, Your Honor. That's not what we're saying. Well, then what are you saying? We're saying it's the breach of good faith and fair dealing as defined by Restatements 205 gives you examples of what constitutes dishonest acts sufficient to warrant the claim of a breach of good faith and fair dealing. Nowhere in Section 40— So you don't have to have a material misrepresentation. You have to have— Any misrepresentation like 930 instead of 9 would be enough. It doesn't have to be material. It has to be something that is deceitful and runs in counter to the expectations of the parties. Does it have to be material? Well, it should be material, and in this case, it is material. But does it need to be material? It should be material that a jury would determine that this is something that is material. Does it need to be relied on? I do not believe so. Not detrimental reliance as defined by the tort of fraud. And we gave an example— Do you have any law for this? That it's not— Yeah, that it doesn't have to be material, that it doesn't have to be relied on. Restatement 2nd of Contracts Tool. It says those things. It gives no indication that there has to be detrimental reliance. The case that was cited to you by the defendant, Stapleton v. Wenvey, is where the district court, not the Supreme Court, the district court first introduced this idea of detrimental reliance in that you have to independently prove the tort of fraud, which begs the question, if you have a fraud claim, you have a fraud claim. It would make the breach of good faith and fair dealing claim just redundant. It does seem odd, doesn't it? It would seem odd, and that's why we contend that it could not be that this claim requires you to independently prove the tort of fraud because you would just have a fraud claim. Well, let's assume for the sake of discussion that we agreed with you that it's a little weird to say you can't prove a breach of contract without proving a tort, and we were prepared to say, yeah, fraud here means something other than what fraud means in other contexts. Walk us through, if you would, what was said or done that constitutes an actionable deceit or an actual actionable act of fraud, not a tort, but just dishonest, that would be the foundation for this claim of an implied breach of good faith and fair dealing. Two of the plaintiffs have this as a claim, Martinez and Carty. With regard to Martinez, Martinez was terminated based on OfficeMax's contention that he caused an almost $15,000 loss at the store with regard to a coupon, and we tried to explain in detail. We've read your briefing. We understand that. But I understand their argument to be, in essence, and they'll speak for themselves, but I understand their argument to be, in essence, he knew what the no-combination policy was, that you weren't permitted to combine your employee discount with any other form of discount. Mr. Martinez was aware of that. He was charged and responsible for running the store and seeing that that policy was adhered to. He admitted that he didn't do that, that he took advantage of the employee discount and the intrusion coupon himself, that he let other people do it, and that it cost the store substantial money, and that's why we fired him. There was a policy. It was explicit. He understood it. He acknowledged he understood it. He broke it. We're allowed to fire people for that, and there's nothing deceitful in that. That's their line of argument. Where's the flaw in that line of argument? That's their line of argument. Right. I want you to address it directly. Where is the flaw, if there is one, in that line of argument? If that was what occurred, I could understand that line of argument. That's not what occurred. Where's the factual error there in those premises? Because the coupon issue, the no-combination policy issue, was not the store policy because of the lines and the conditions that were on the ground at that store. At the store, the computer. Are you saying that even though it's explicit in the handbook, it's also explicit in other documents, the names of which are escaping me at the moment,  that if things got busy in the store, Mr. Martinez was free to say, things are really busy, forget it. Go ahead. I'm sorry, Your Honor. Mr. Martinez, first of all, testified that he did not even know that the employee did that combination policy, that the computer did that. He did it himself, right? No, he did not. It was he did not do the transaction himself. Maybe I've got a misunderstanding of the record. I thought Martinez did it himself. No, he used the intrusion coupon in combination with his employee discount. He himself? That's at page 8 of the record, right? Your Honor, he provided his employee discount card to the cashier and he testified that he did not know she actually did that transaction. But because the computer system is programmed to be able to process these things automatically. And because of the nature of the on the ground conditions at the store, the lines were kept moving by permitting the computer to process all transactions in that matter. Right, but that just explains why it happened. It doesn't deny the fact that it happened. He doesn't deny the fact that it happened. He's saying he did not know that that is what occurred. He's claiming honest mistake, but he still did it. And who was the manager of the store? Well, Mr. Martinez was the manager of the store, but that's part. So he can blame the manager for store policy? Your Honor, it's not as that's not the facts of the case. It occurred, but he explained that he did not know that one, that it occurred. And two, the store policy was that the computer processes these transactions because of the underground on the ground conditions. If the employer makes a mistake, is that actionable? Let's assume you have it right. But the employer has an honest belief that their story is right. Is this actionable? There is no honest belief in Martinez's case or Cardi's case. Because with regard to Cardi, I know my time is leaving, is finishing. With regard to Cardi, they gave Cardi the code to use and then turned around and fired her for using the exact same code. Cardi did not have any coupon issues. She was never terminated for any coupon issues. They only alleged that issue with regard to Martinez. So because of the conditions on the ground, this is why we and a jury would be able to hear this evidence. We attempted to demonstrate the conditions on the ground, the conditions that OfficeMax allowed to be on the ground by their staffing issues, high employee turnover, no air conditioning. I'm sorry, my time is up. If I could just finish this thought. You can finish that thought, yes. Because of these conditions, the policy was a sound policy to keep the lines moving in the store and to then turn around and fire an employee for those reasons and make up the issue about him being responsible for what happened at the store, we believe was fraudulent and deceitful, Your Honor. Thank you. You know, Will, you left quite a lot of time for rebuttal. So if you could deal with jurisdiction on the cross appeal, that would be great. Thank you, Your Honor. Thanks. Good morning, Your Honor. Good morning. If I can start where you left off with appellant's counsel on the good faith and fair dealing. I believe this court, there was a question whether this court might be prepared to say that fraud means something other than the common law understanding of fraud. The issue in this case, obviously, is what Virgin Islands law says and how Virgin Islands courts have interpreted this issue. And they've adopted the restatement, right? The Supreme Court did in Chapman v. Cornwall utilize the restatement and said in a good, first the court said we have not found that there is no requirement for a contract. And the district court in this case clearly found that there was no contract and plaintiffs or appellants do not challenge on appeal the finding that there was no contract. A number of courts... Well, I'm not sure how you can say that. They've got this theory that there was a contract. At the very least, it was a unilateral contract. And how could there be a relationship? I mean, what would the relationship between employer and employee be other than a contractual relationship? I agree to pay you money. You agree to give me labor. Isn't that a contract? Isn't that what we understand a contract to be, an exchange for mutual value? I mean, certainly a lot of courts have sort of said that there is an employment relationship is contractual or has some contractual elements. They say it because that's how we commonly think of what a contract is. It fits the definition of contract, right? Certainly, Your Honor. But courts have been very clear in this territory that to establish a claim of breach of good faith and fair dealing, there must be fraud or deceit. Now, appellants have, through their counsel in this case and in other cases, tried to relax that standard and urge courts to have just a reasonable expectation of the parties. But as recently as last month, the Superior Court of the Virgin Islands, looking at this claim, clearly said that in order to state a claim for breach of the covenant of good faith and fair dealing based on fraud, the complainant must demonstrate a knowing misrepresentation, intent by the defendant that the plaintiff rely on that false statement, actual reliance and detriment as a result. Do you have a site for that? The case is RIMAC versus Virgin Islands Water and Power Authority. When I last checked, it was not reported except on the Superior Court's website. But that's a November 10, 2016 decision of Judge Dunstan that obviously came out after our briefs were filed in this case. Then I'd suggest that counsel submit a 28-J letter with a citation in it, all right? Certainly, we will do so, Your Honor, with the court's permission. But the decision in RIMAC is consistent with Bowman versus Virgin Islands Water Authority. That's a decision of Judge Thompson earlier this year in which she also, following Virgin Islands law, spoke to the requirement of actual reliance on a false representation. No Supreme Court authority at this point, though, right? The Supreme Court has not, except in Chapman versus Cornwall, where the court did say that just a general allegation of pretext is not enough and that there needs to be fraud in order to bring a case. Logically, speak with me logically. This is all an attempt in the Virgin Islands to implement the restatement description of what constitutes a breach of the implied covenant of good faith and fair dealing, correct? I'm sorry, could you say that again? I apologize, I lost you there. These case sites that you're giving us now, from Judge Dunstan and Judge Thompson, these are case sites that are an attempt to implement the Virgin Islands adoption of the restatement as the statement of the law on implied covenants of good faith and fair dealing. Is that right? Well, I think in Chapman, the Virgin Islands Supreme Court, as you know, has gotten away from a wholesale adoption of the restatement and gone to an analysis of a case-by-case discussion or section-by-section discussion, but in Chapman... Here's the purpose of my question. I'm trying to get at the logic of this. What is the logic of saying you can only have a breach of contract claim for this covenant if you can independently prove a tort? I think the logic, well, twofold. First of all, the idea is that you don't have a... An idea that a claim could arise whenever there's some reasonable expectation of one party. That would be sort of a claim that would arise any time. It's, you know, what time is the store open? It wouldn't arise any time, because you just said, because it requires that there be reasonable behavior, that the reasonable expectations of the parties, not made up, not fanciful, but what ordinary sensible people would understand is good faith behavior is something that parties have to adhere to, and that you don't have to demonstrate a fraud to say that behavior frustrated the ordinary expectations of reasonable people. That's what I understand your opponent's argument to be. I might not be doing her the full credit. But that's what I'm trying to get you to grapple with. Like, meet that head on. I hear her saying it can't mean that, and I want you to say why it can't. Well, it can, because that's what Virgin Islands courts have consistently said, and so if this court were writing on a clean slate, perhaps you all may come to a different conclusion, but I think we have a fairly consistent pattern of Virgin Islands courts, both the district court and the superior court, requiring an actual showing of a material misrepresentation, reliance by the defendant, which is. And they say there was that. They say that the loss prevention officer from OfficeMax came in, made a promise to Mr. Martinez. The promise was, come clean and you won't be fired. And he came clean and they fired him. That's both a breach of a unilateral contract and that's a deception and a violation of good faith and fair dealing. Meet that head on. What's your response to that? Several. First of all, that was not, as we pointed out, pled in their complaint. This was a passing sentence in their summary judgment opposition, untethered to any place in the record. But beyond that, Your Honor, the statement that we're talking about is also, as the court discussed when it talked about the negligent misrepresentation claim of other plaintiffs, he signed a statement which said there was no promise or inducement whatsoever. In this case, Mr. Martinez presumably made a correct statement. He did not admit to something that never happened. This might be different if Mr. Martinez said, I stole ten computers from the store in order to keep his job, where that didn't happen. He made a truthful statement. He made it in a context where he acknowledged there was no promise or misrepresentation, and all he did was repay an amount that was exactly the improper discount. What's the response to the argument that he didn't know this was happening, the computer did it? It's true it ended up putting two discounts together, but that was embedded in the system and he didn't realize it was happening. That's what I'm hearing from the podium now. What's the answer to that? Is the answer who cares, or does it matter that he knew or didn't know that it was a combination? We do not believe that there's any legal authority that would say that that matters for Mr. Martinez, who was a manager who did not have a claim under the wrongful discharge act. Now, the district court did seem to think that that mattered for the plaintiffs who had claims under the wrongful discharge act. But, of course, Mr. Martinez is the manager of the store. He is the person responsible for knowing what goes on, and we do not think that there's any authority for saying that it's a breach of the duty of good faith and fair dealing to hold a manager accountable for following store policy and ensuring that the folks who work with him, this is not customers violating, it's his employees. How about Ms. Carty? They say you told her to do it, that she was told to use this 999 code. She did it, and then later she gets fired for it. That's a put-up job. I mean, if we assume, as we're required to, that her version of the facts is right, how can it be appropriate to fire an employee for doing what the employee was told to do? Again, the arguments they make in their briefs are not supported by the record. They pointed to no evidence in the record to support the arguments that are now being made on appeal. But what Ms. Carty testified, she was fired for allowing a return to be made where she enters information saying that the person returning a product was somebody other than the individual standing before her. She testified that she knew what she was doing, and she knew that that was violating company policy. This idea of entering 999 to keep the lines moving, she wasn't fired for keeping lines moving. So even if you accept that there was some evidence that she thought she could use 999 to keep lines moving, that's not what she was fired for. She was fired for something that she clearly acknowledged in her deposition. We pointed to evidence below, and there was no dispute of fact that she knew, and that there was evidence that she understood that entering the name of, you know, John Doe, when she knew that Jane Doe was standing in front of her, violated Office Max's policies. So, again, we, you know, as – I got you on that, and I apologize. I've been kind of occupying you here, but there's just a little bit of time left. Do you want to get to the jurisdiction? Hold on. I have a concern about Serrano and the – actually, in particular, the Fair Labor Standards Act claim. You know, he's got to be – you win if he's a bona fide executive. But, I mean, is there anything in the record he had authority to hire and fire and make recommendations on employment matters? I mean, it seems like he did some pretty routine duties despite his title. How do you deal with that? And, again, we're on summary judgment. Right. And with respect to Mr. Serrano and the Fair Labor Standards Act, as we pointed out, he offered no evidence or argument as to why he should have been classified as non-exempt. If you look at pages 3054 to 3056 of the Joint Appendix, which is their summary judgment opposition, you'll see that it's nothing more than a recitation of the law with no reference to the facts. So, we believe – Didn't he testify? He stocked shelves. He moved boxes. He counted money. All kind of clerical type things. As the – even if this Court were to find that they hadn't waived that, Your Honor, we believe that, as we pointed out below, his primary duty was management. The fact that he performed non-exempt tasks, as this Court found in Itterley v. Family Dollar Stores, does not mean that he doesn't meet the test. Ms. Carty had the same job, and they don't raise that claim with respect to her. They ran the store for several months when there was no manager. You know, he was, you know, of one of the people. He directed the work of two or more employees. He certainly met the salary basis test. He had authority to make recommendations as to discipline and – Does his title matter in that regard, his title and job description? Because his title, I mean, it says he's an assistant manager, and his job description talks about management activities. So I'm wondering, can someone who is hired to be a manager, but let's just say they're a very passive person or they don't do much work, can they not – can they sort of make themselves not a manager by virtue of – Not doing their job. Yeah. I guess my question is, is it a formal test or a functional test? We believe it's a functional test. In our case, the job description was corroborating evidence, but the court didn't stop at the job description. The district court did look at the testimony that was presented to it on summary judgment, which indicated that Mr. Serrano directed, you know, more than two employees. He met each of the elements of that test. And, you know, incidentally, Mr. Serrano then cut and paste from his job description on a resume for another job. So certainly – Which shows he was holding himself out as a manager. Right. And if that's all we had, you know, this might be a different case. That's not all we had. We did have the testimony of Mr. Serrano and Ms. Carty, who had the same job. And they, you know, together, based on that record, the district court properly found that it was undisputed that as a matter of law, you know, he was not entitled to overtime. Let's talk about your cross appeal. And first off, let's talk about whether we have appellate jurisdiction over both of those claims. The fees – rather, the attorney's fees and the costs. Right. Certainly, as to the costs, the district court did make a final decision. We believe there is no question that the district court considered – Well, the district court made a decision as to costs, but there were still outstanding claims with respect to other parties. I mean, did the district court say, and I'm certifying this cost decision under 54B? The district court did not certify that. But as to the plaintiffs, the appellants on appeal, their claims were over. And so, certainly, Carty, there were no more claims. Mr. Serrano, their cases were over. Those were the only litigants as to whom we were seeking costs. We were not seeking costs as to – The dismissal was without prejudice, right? It's kind of within your control. Finality is in your control at this point, right, on the counterclaim? I mean, that issue sort of percolated up and went back down, and then the district court certified it so that we are here on the merits of the appeal. But without a 54B certification and with a dismissal of the counterclaim without prejudice, I mean, is it final? Can we really hear this now? I'm talking about the costs. Okay, not the entire appeal. No. No. As to – we do believe the decision as to costs is final. I mean, there was nothing left for the district court to do. You have a counterclaim dismissed without prejudice. That's what Judge Shigaris is pointing out, which I would like you to speak to as well. Right. You have it within your control to decide whether or not you're going to press that or not. So is it final? Our position would be that that dismissal without prejudice of the counterclaim does not render the court's decision on costs non-final. What if you get our decision and say, great, let's reactivate this thing and go forward? Then, you know, we're spinning our wheels, right? It just turns out not to be final. Well, I think the representation to the court was that the counterclaim would only potentially be an issue if the entire case were remanded. In other words, you've still got it in your pocket. Isn't that the point of the finality rule to not let parties take a win and then come back and hit us with a piecemeal appeal? Put another way, maybe what harm is it for us to remand on that issue? I mean, whether it's lack of jurisdiction or not, if we were to rule in your favor on the appellant's grounds of reversal, what's the harm in sending back the issue of attorney's fees and costs or just the issue of costs to the district court? I guess from our perspective, I would have a hard time as I stand here articulating a harm. I do not know how we could have sat by with this appeal, not challenge the costs, and then at the end come back. I think at that point plaintiffs or appellants would say it's too late. You had your opportunity. Yeah, I'm not insinuating you did anything wrong. I'm just trying to figure out as a practical matter what makes the most sense now. I mean, clearly the district court said that you weren't going to get your costs and fees because of indigence or hardship or whatever. That was a substantive ruling of the trial court, right? Exactly, and we do believe that that substantive ruling was incorrect as a matter of virtue. You want us to say that was an abuse of discretion under the local law, and if we don't say anything about that and just send it back, then why would we expect the district court to do anything differently? Well, that is correct. I mean, I guess if the district court got a second bite at the apple and did the same thing, we could potentially be back here again, and, you know, I think that's our concern in terms of judicial economy. But we acknowledge this is a complicated issue. The Supreme Court has, you know, spoken in a few ways, but we did believe it was well-founded to raise our concerns about those things now. How about is there any other argument on fees, the attorney's fees? I mean, yeah, it's true that the 54B order had been granted, I guess, by the time the judge made his ruling. But, I mean, it seems like the judge may have just punted and said, well, let's see what the Court of Appeals does, then I'll get around to the attorney's fees. Is that really the kind of finality that we require? The court did punt, and then it didn't punt. I mean, it punted in the sense of exactly what Your Honor suggested, but then went on to substantively say these cannot be parsed out and seemed to then make a substantive determination about our fee petition and our position on appeal was that that was not grounded in the record, and so, therefore, was an abuse of discretion along with the determination that we weren't a prevailing party in the judgment. Thank you, counsel. Thank you. Good morning again. Good morning. With regard to the jurisdictional issue, this court required the appellants to return to the district court and seek Rule 54B certification. The appellants did so. The appellees did not seek Rule 54B certification on their particular issues that they are now raising on appeal. So it is our contention that this court does not have appellate jurisdiction. It was a simple process. We were in the Rule 54B stage of requesting it of the district judge. The appellants could have at that time also sought certification, and they did not. And in light of this court's prior opinion that the case was not final and requiring us to certify, this court should also determine that the appellee's failure to certify renders this court without jurisdiction to hear this appeal, their appeal, their cross appeal. With regard to the elements of the breach of good faith and fair dealing claim, the appellee- Let me just ask you this. Are you aware of the Rimac case that your opposing counsel cited to us from President Judge Dunstan? Yeah, we are. Both of us are on that exact same case. And the reason- I'm sorry. Isn't that relevant? Isn't that something we should be thinking about? It is not. Because, again, the Superior Court- it's not a Supreme Court case. The Superior Court did not look to Chapman v. Cornwall for that opinion. They looked to the cases as it was determined by the other courts, the district court. But the Chapman v. Cornwall doesn't speak to this specific issue, does it? Chapman v. Cornwall doesn't purport to say whether fraud has to mean fraud, as in a material misrepresentation with detrimental reliance, or whether it means some lesser thing, as you've described it. It doesn't get into that at all, does it? The Chapman v. Cornwall case adopts your statement, second 205. Right. But the answer to my question, I think, is no. It doesn't get into that specific point at all. And yet this REMAC case does get into it. So there's not contrary Supreme Court authority. There's no Supreme Court authority on this point. And it appears that there is Superior Court authority. Isn't that something that's persuasive and should matter to us in making this decision? Your Honor, we- well, there's Superior Court authority citing to cases that are not Supreme Court cases. And I understand the Court, it may be persuasive in looking to how the Supreme Court may hold. But there's no other body to determine what the case is or what the element should be than the Supreme Court. And if this Court, in light of the REMAC case, is now concerned as to whether or not this is an actual element, there is certification procedures to the V.I. Supreme Court so they can give- of this issue to the V.I. Supreme Court would give the Court a definitive answer with regard to whether or not. But I don't believe that the Supreme Court would adopt the view that you have to prove the tort of fraud in a breach of- implied breach of- a breach of duty of good faith if you're dealing with- I think you're right about that because I can think of some simple hypotheticals between two businesses. For example, if I promise to sell you all of my output of steel and we agree on a price, and then, you know, a month after you and I sign that five-year contract, I find somebody else who's going to pay me double what you do. And then I, you know, close down my business and change the name of the business and don't give you any steel and sell it to the gal who's paying me twice what you were going to pay me. You'd probably sue me for breach of good faith and fair dealing and I haven't deceived you or defrauded you in any way, right? That's correct, Your Honor. All right, but then this does seem to be putting a square peg into a round hole in the employment context, though. And that's- I mean, isn't it true that this good faith and fair dealing principle, that that's an implied term in contracts, goes to the heart of the type of business relationship that I just articulated in my hypothetical and it really doesn't fit in this employment context where the boss can say to the employee, oh, you lied to me, or the employee says to the boss, you were dishonest with me. It just- I'm having trouble understanding how it fits. And I think that's always been, as attorneys who have, you know, litigated this issue with this claim, it seems that the courts are more willing to provide businesses with protections with regard to the implied duty of- than employees who depend on these jobs for a livelihood. But do they do it in employer-employee cases? I mean, clearly they do provide the protection in terms of business commercial, I think, for the reasons I articulated. But do you have cases out there that show the good faith and fair dealing covenant being cited as a basis for cause of action? I mean, either way, in favor of employers who claim that employees are dishonest or with employees claiming that the employer lied to them. We have cited cases out of the Washington Supreme- the Washington jurisdiction for the proposition. They do recognize the claim. And I can't overemphasize enough that the Supreme Court of the Virgin Islands- that Virgin Islands also acknowledges the claim with regard to at-will employment. But acknowledging the claim doesn't mean that it's actually been applied, right? I mean, do you have other- we should just- I should go back and look at those Washington cases. That's what you're telling me. Yes, Your Honor. And, you know, cases- How about the Bethea case out of the District of the Virgin Islands? I mean, the district court there seemed to say explicitly, yeah, this could apply in the employment context, but it's got to be understood as applying not in the same way it would in other contexts. Otherwise, it would swallow the notion of at-will employment. You can't allow that to happen. And so even though we'll apply it, we're going to be careful not to read it too broadly in the employment context. That's how I understood Bethea. Is that a correct understanding? If it is a correct understanding, why doesn't that answer Judge Hardiman's question and tell us- because it doesn't fit very well in the employment context. Well, Bethea- and we were also counseling on that same case. Bethea- We see each other all the time. We actually do. And I briefed that issue. So with the Bethea case, it was- the courts- the courts have been, I'd say, reluctant to recognize a valid claim within the employment context. And post-Chapman v. Cornwall, the courts have now said, okay, the V.I. Supreme Court has recognized this claim. How is it therefore- what does it look like is what everybody has struggled with. What does this claim look like? Right. And a thoughtful judge on the district court has looked at it and said it applies, but you've got to kind of read it narrowly there because it doesn't fit very well there because otherwise it's going to swallow up the notion that contracts of employment that are at-will really mean at-will. You've got to not read it too broadly. Well, that's where Restatements 205- if you read Restatement 205 and the commentary to Restatement 205, there are numerous examples of how the restatements envision this contract claim looks like. What would be a successful claim versus an unsuccessful claim? And with regard to Martinez's case, we've always believed that his- the facts of his case- Before you go there, and if my- yeah, if my colleagues here will let me just get an answer to this one question. Do you agree or disagree with the district court in Bathia in saying in the employment context, even though this applies, it has to be done gingerly? You can't treat it like you would in other contexts because you have this tension with at-will employment. It's got to be read more narrowly in this employment context than perhaps you otherwise would. Is that a sound understanding of the law or not? I believe that the district court was not correct in that- was incorrect in that it has to be narrow. What does narrow mean? If the claim is what it is, it's defined by the elements as contained in 205, or the VA Supreme Court will fashion some other definition. Or is this, as we contend, an issue for the jury where you say, okay, here are- here's the situation. Was it reasonable? Did the employer act deceitfully towards this employee? Is it not a jury question versus the court sitting here and determining what is or not reasonable or unreasonable with regard to what transpired? Thank you so much for permitting us to argue before you today. And we refer the court to our briefs and request the court grant the relief we seek. Thank you, counsel. Thank you.